# Sarah Cordelia Smith *v.* Carl Horn and Margaret Horn, Appellants.

*Deed—Description—Boundaries—Evidence.*

Where the eastern boundary of a lot is described in a deed as " beginning at a point on the south side of the Warren and Franklin road and the north-east corner of . . . . lot, running thence southwardly along said . . . . line ten perches to a post, thence eastwardly eight perches to a post, thence northwardly to a post in said road, thence westwardly along said road to the place of beginning," and there is nothing else in the deed to show what was the lot to the east of the land, and the evidence as to the location of the eastern line is conflicting, the position of the line is a question of fact for the jury.

Argued May 6, 1895.    Appeal, No. 6, Jan. T., 1895, by defendants, from judgment of C. P. Warren Co., Dec. T., 1892, No. 42, on verdict for plaintiff.    Before STERRETT, C. J., WILLIAMS, McCOLLUM, DEAN and FELL, JJ.    Affirmed.

Trespass for tearing down a gate and removing a fence erected on land claimed by defendants.    Before NOYES, P. J.

Both parties claimed under deeds from James T. Magee.

Before Dec. 4, 1849, James T. Magee was the owner of a piece of land, in Tidioute borough, on the south side of Main street, which street is called, in the deed of Magee, the Warren and Franklin road.    This strip of land lay between the road and the Allegheny river.    Magee sold off lots along the road, at different times, and to different individuals, and the controversy in this cause arises as to the boundaries between two of these lots which adjoin each other.

On Dec. 4, 1849, said Magee and wife conveyed by deed to a Mr. Alger a portion of said land described as follows in said deed : " For and in consideration of the sum of $255 lawful money etc., to them in hand paid by the said party of the second part, the receipt whereof is hereby confessed and acknowledged, have granted, bargained, sold, demised, released, aliened, conveyed and confirmed, and by these presents, doth grant, bargain, sell etc., to the party of the second part, and to his heirs and assigns forever, all that certain piece or parcel of land, situate, lying and being in the Township of Deerfield (now

Tidioute borough), County of Warren and State of Pennsylvania, known and described as follows, to wit:

" Beginning at a point on the south side of the Warren and Franklin road, and the north-east corner of —— lot, running thence southwardly along said —— line, ten perches to a post, thence eastwardly eight perches to a post, thence northwardly to a post on the said Warren and Franklin road, thence westwardly along said road to the place of beginning, containing one half of an acre of land more or less."

Other facts appear by the charge of the court, which were in part as follows:

" The plaintiff shows a legal title by conveyances to a piece of land situate on the south side of Main street, in Tidioute, this county. This piece was conveyed by James T. Magee, to S. H. Evans, and B. T. Hopewell, in February, 1865; and a chain of title from these parties to the plaintiff is shown, and it is shown she is in the occupation of that piece of land. The defendants, Margaret Horn and her husband, were or are in the occupation of a piece of land adjoining on the west. And the real question is, where is the division line between these pieces of land, in the first place; and second, what are the rights of the respective parties in the strip between the two lots, which is claimed by the defendants to be an alley held in common for their common use. It appears that the plaintiff's husband erected a gate across the end of this alley or lane, and that that was the gate which was torn down by the defendants; I believe also he built the fence which was torn down.

" Now, the first question is to determine the limits of the defendants' land, to know whether or not the acts complained of were committed within the lines of her land. Referring to the original deed from Magee, who is admitted to be the common source of title, that is to say, the man who at one time owned both of these pieces, from him the conveyances come from both sides, and therefore we go back to him. We have a deed from Magee to Evans and Hopewell, beginning at the northeast corner of land of Esther Goodrich. Thence south a given number of rods, thence east a given distance to other lands of the grantor, and then north to the road, and then west along the road to the place of beginning. The land of the grantor on the east is not designated so we can find its bound-

aries, therefore we cannot fix the eastern boundary of this land, except by the western, and we cannot fix the western unless we fix the eastern boundary of Esther Goodrich's land.    Therefore we are bound to search for the boundaries of Esther Goodrich's.    Esther Goodrich is shown by the evidence, without contradiction, to have occupied a piece of ground fronting on the same Main street, a part of the tract  conveyed by Magee to Alger.    Esther Goodrich claims under a Mrs. Washburn, by deed from her, and Mrs. Washburn traces her title to Madison Alger, who was shown to have occupied a portion of the ground, at least, at quite an early day, somewhere  about  1850 perhaps.

" The deed from James T. Magee was given in evidence, but its description is so indefinite that it is impossible to locate it by the deed.    The only call in this deed, except the road, is the corner of blank lot, the tract not named, just simply a blank in the deed.    It calls thereby for the land of the grantor somewhere probably, but whether it does or not, we are unable to find that tract.    The evidence does not disclose to us any tract of land existing at that time as a separate piece that we can identify as the land intended.    It is impossible therefore from the calls in the deed, and the evidence showing the situation of affairs at the date of the deed to locate it, except that it must be somewhere on the south side of the Warren and Franklin turnpike at this place.    But there is evidence, as I have said, that at the date of the deed to Hopewell and Evans, Esther Goodrich was in occupation of a piece of ground, claiming, as I have said, under Madison Alger as the original owner.    This was the eastern part of what had been claimed by Alger, and there is considerable evidence in the case tending to show where Alger claimed his lines to be, or those under him ; that is, a fence or other monuments erected along there, and especially of a fence on the eastern side of this piece claimed by Esther Goodrich.

" [From all the evidence you are to determine where the eastern boundary of Esther Goodrich's land, as she claimed it, and occupied it in 1865, was, in order thereby to fix the western boundary of the land conveyed by Magee to Hopewell and Evans.] [1]    If prior to that date, in 1865, a fence had been maintained on the eastern side, between Mrs. Goodrich's, and

Mr. Magee's lands, and has been done since by common consent by both owners, it would be fixed. The building of a fence by one party without the consent of the other and its maintenance for a short time would not necessarily fix the line. We have no evidence, that I am aware of, of any actual concurrence of Magee and Mrs. Goodrich, or anybody before her in fixing that line, no evidence, I mean, that they came together at any specified time, and agreed upon any particular monument, or set anything to mark it, but there is evidence of a general character of what was done by the various parties and where they lived, and from all that you must determine, if you can, where Esther Goodrich's line was in 1865, where it was marked upon the ground if it was so marked. If you should find that the line was fixed between Magee and Esther Goodrich, or between Magee and Mrs. Washburn, or between Magee and Madison Alger, the eastern line of the Alger claim fixed and agreed upon by any monument, that would be the line. I do not recall, I say to you, any evidence of that kind. I will not review the evidence. You have heard it commented on by counsel on both sides, and I have no doubt that you will be able to apply the law that I give you to the facts, and thus solve the difficulty.

" [If the tearing down of the fence testified to by the plaintiff, and the removal of the gate or gate post, was within the lines of the plaintiff's land, thus fixed, and outside of the lines of the land of Esther Goodrich as she occupied and claimed it in 1865, then the plaintiff should recover in this case whatever damages she has sustained, unless you find that the defendants had a right to have that particular piece of land unobstructed by gates and fences by virtue of their claim that it was a free and open right of way between them.] " [2]

Defendants' points were among others as follows :

" 2. That the only monument on the ground showing the location of the western boundary line of the M. Alger lot is the old line fence, between this lot, and the lot on the west, sold by Magee to James H. Neil, July 3, 1853, and the Alger lot is to be located with its full complement of eight rods east of that line fence. *Answer :* Second, I answer this point in the negative ; I leave the location of the Goodrich land, which is the controlling question, entirely to you under all the evidence." [3]

" 4. That if the eastern line of the M. Alger lot is east of where the defendant removed the fence, the plaintiff cannot recover. *Answer :* That is affirmed, understanding the M. Alger lot to include and mean the Goodrich land." [4]

" 6. If the jury believed that James T. Magee, under whom both the plaintiff and defendants claim, and his grantees, the grantors of the plaintiff, consented for twenty-one years to the location of a lane, and the continuous use of it as a right of way, of a strip along the western boundary of their land, to be used as such way, in connection with a strip of land dedicated to the same use by the grantors of the defendants, from the east side of their land, then the defendants became entitled to the use and enjoyment of such lane as a right of way, and the plaintiff cannot recover in trespass for such use, or for removing obstruction placed therein by the plaintiffs or others. *Answer :* This point you will notice is based upon the actual consent and agreement of the parties ; if there is evidence here from which you could find that the parties actually did set apart a certain piece of ground for use of a lane, and they did use it together in common for a time, exceeding twenty-one years, it would be correct. But there is no evidence of any direct and express agreement between the parties concerning this lane." [5]

Verdict and judgment for plaintiff for $10.75. Defendants appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*W. W. Wilbur, Wm. Schnur* with him, for appellants, cited : Hastings v. Wagner, 7 W. & S. 215 ; Hoffman v. Danner, 14 Pa. 25 ; Hetherington v. Clark, 30 Pa. 396 ; Harvey v. Vandegrift, 89 Pa. 351 ; Banks v. Ammon, 27 Pa. 172 ; Van Horne v. Clark, 126 Pa. 411 ; Rhea v. Forsyth, 37 Pa. 503 ; Stoner v. Hunsicker, 47 Pa. 514 ; McElhone v. McManes, 118 Pa. 600.

*D. I. Ball, C. C. Thompson* with him, for appellee, cited : Mellon v. Davison, 123 Pa. 298 ; Hammer v. McEldowney, 46 Pa. 334 ; Soles v. Hickman, 20 Pa. 180 ; Ferguson v. Staver, 33 Pa. 411.

PER CURIAM, May 20, 1895:

We find nothing in this record that requires us to sustain either of the assignments of error. When considered in connection with other parts of the learned trial judge's charge, and especially in the light of the facts which the testimony tended to prove, the instructions recited in the first and second specifications are substantially correct. The same is true as to his answers to defendants' points, recited in the remaining three specifications. The description in the deed of February 1865, from Magee, who is admitted to be the common source of title, is so vague and indefinite that it was necessary to resort to other evidence for the purpose of determining the location of the dividing line between the lots, etc. It thus became a question of fact for the consideration of the jury, under all the testimony; and the case appears to have been submitted to them with substantially adequate and proper instructions.

Judgment affirmed.